UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHARON R. HAMMER and JAMES R. DONOVAL, husband and wife,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF SUN VALLEY; NILS RIBI, in his individual and official capacity; and DEWAYNE BRISCOE, in his individual and official capacity,<br><br>　　　　　　Defendants. | Case No. 1:13-CV-00211-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Pending before the Court in the above-entitled matter are Defendants' Motion for Judgment on the Pleadings and Plaintiffs' Motion to Convert. The parties have filed responsive briefing and the matters are ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER - 1**

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Sharon R. Hammer and James R. Donoval, husband and wife, filed the Complaint against Defendant City of Sun Valley ("Sun Valley" or "the City") as well as Defendants Nils Ribi and DeWayne Briscoe in both their individual and official capacity. (Dkt. 1.) Mr. Ribi served as an elected City Council Member from January of 2006 to January of 2014 and was City Council President from 2008 through 2009. Mr. Briscoe is the current elected Mayor of Sun Valley as of January 3, 2012. Prior to that, since January of 2008, Mr. Briscoe was also an elected member of the City Council. Mr. Briscoe served as City Council President from January 2010 to January of 2012. The claims raised in the Complaint are:

| | | |
|---|---|---|
| Count 1 | Gender Discrimination and Harassment, Idaho Code §§ 67-5901, *et seq*., against Sun Valley; |
| Count 2 | Retaliation, Idaho Code §§ 67-5901, *et seq*., against Sun Valley; |
| Count 3 | Retaliation Freedom of Speech, 42 U.S.C. § 1983, against all Defendants; |
| Count 4 | Retaliation Access to the Courts, 42 U.S.C. § 1983, against all Defendants; |
| Count 5 | Retaliatory Investigation, 42 U.S.C. § 1983, against all Defendants; |
| Count 6 | Retaliation against the Plaintiffs'[1] Right to Intimate and Political Association, 42 U.S.C. § 1983, against all Defendants; |
| Count 7 | Deprivation of Property, 42 U.S.C. § 1983, against all Defendants; |

---

[1] All of the claims in the Complaint are alleged to have occurred against Ms. Hammer with the exception of the Sixth Cause of Action for retaliation which is claimed to have occurred against both Ms. Hammer and Mr. Donoval. (Dkt. 1.)

**MEMORANDUM DECISION AND ORDER - 2**

| | | |
|---|---|---|
| Count 8 | Unconstitutional Bias Deprivation of Property, 42 U.S.C. § 1983, against all Defendants; |
| Count 9 | Deprivation of Due Process, 42 U.S.C. § 1983, against all Defendants; |
| Count 10 | Civil Conspiracy, 42 U.S.C. §§ 1983, 1985, against all Defendants; |
| Count 11 | Assault of Ms. Hammer against Mr. Ribi individually; |
| Count 12 | Wrongful Termination of Ms. Hammer against all Defendants; |
| Count 13 | Breach of Contract against all Defendants; |
| Count 14 | Negligent Infliction of Emotional Distress against Defendants Ribi and Briscoe. |

(Dkt. 1.) The claims relate to events occurring during Ms. Hammer's employment as the City Administrator of Sun Valley from June 1, 2008 until January 19, 2012. During that time, Plaintiffs allege that Ms. Hammer was repeatedly and continuously harassed, physically and emotionally intimidated, verbally abused, and assaulted by Mr. Ribi. Ms. Hammer asserts she reported these incidents to City authorities. In retaliation, Plaintiffs argue, Mr. Ribi and others trumped up allegations of misconduct by Ms. Hammer resulting in her twice being placed on administrative leave pending an independent internal investigation and ultimately terminated. Plaintiffs further argue Mr. Ribi acted with hostility towards them due to Mr. Donoval's political affiliations. Other of the factual allegations relate to improper conduct by various City employees concerning their investigation and allegations of financial misconduct by Ms. Hammer and their making of disparaging public statements concerning both Plaintiffs. Ms. Hammer alleges the Defendants engaged in actions designed to publicly destroy her personal and professional reputations in retaliation for her complaints of misconduct against Mr. Ribi.

**MEMORANDUM DECISION AND ORDER - 3**

Ms. Hammer filed an administrative charge of discrimination and retaliation against the City with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC"). A Right to Sue letter was issued and, thereafter, Ms. Hammer filed a complaint in the Blaine County District Court pursuant to the Idaho Protection of Public Employee's Act ("IPPEA"). That action was ultimately dismissed. On May 3, 2013, Plaintiffs filed the Complaint in this case. Attached to the Complaint are: 1) the City's Personnel Policies & Procedures Manual, 2) the City's Municipal Government City Council and Mayor Powers and Authorities, 3) the City Code of Ethics and Code of Conduct, 4) Ms. Hammer's Employment Agreement with the City, 5) Ms. Hammer's Employment Agreement Extension, 6) job description for the City's Finance Manager/Treasurer, 7) the City's Credit Card Policy, 8) job description for the City Clerk, and 9) Engagement Letter for the City's Investigation. (Dkt. 1.) The Court now considers the Motion for a Judgment on the Pleadings and related filings and finds as follows.

## STANDARD OF LAW

Motions for a judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c) which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated under the same standard applicable to motions to dismiss brought under Rule 12(b)(6). *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997). Thus, the

**MEMORANDUM DECISION AND ORDER - 4**

standard for a motion for judgment on the pleadings is that articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief.[2] When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). A judgment on the pleadings may be granted only when it appears beyond doubt that the claiming party can prove no set of facts in support of his claim

---

[2] Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

**MEMORANDUM DECISION AND ORDER - 5**

which would entitle him to relief." *Enron Oil*, 132 F.3d at 529 (internal quotations and citations omitted).

When deciding a motion for judgment on the pleadings, the Court assumes the allegations in the complaint are true and construes them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A judgment on the pleadings is appropriate when, taking all the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005); *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## ANALYSIS

**1.     Plaintiffs' Motion to Convert**

As a preliminary matter, Plaintiffs have filed a Motion to Convert the Motion to Dismiss into a motion for summary judgment. (Dkt. 22.) Plaintiffs argue the Defendants' waiver argument is most suitable for analysis under the summary judgment standard because the Court should consider materials outside of the Plaintiffs' Complaint.

Defendants oppose the Motion arguing they have not relied upon any materials outside of the pleadings or written exhibits attached to the pleadings. (Dkt. 29.) Further, Defendants argue, no additional materials other than those attached to the pleadings should be considered because the terms of the contract are clear and unambiguous.

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (citations omitted). The Court may, however, consider facts established by exhibits attached to the Complaint, facts which may be judicially noticed, and matters of public record. *Id.* Consideration of such documents outside the complaint does not convert the motion to dismiss into a motion for summary judgment. *Id.*; *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

Here, the Court can and properly has considered the documents attached to the pleadings on this Rule 12(c) Motion without converting it to a motion for summary judgment. (Dkt. 1, 11.) The Court has not, however, considered any documents that were not attached to the pleadings. In doing so the Court notes that even though Plaintiffs' allegations are accepted as true for the purposes of the instant Rule 12(c) Motion, the Court need not accept as true allegations that contradict matters contained within exhibits to the nonmoving party's pleading, documents referred to in the non-moving party's pleading, or materials that can be judicially noticed. *See Sprewell v. Golden State*

**MEMORANDUM DECISION AND ORDER - 7**

*Warriors*, 266 F.3d 979, 989, amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); *In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999). The Plaintiffs' Motion to Covert is denied.

Furthermore, in deciding this Motion, the Court has not considered any extrinsic evidence. The instant Motion is for a judgment on the pleadings raising a legal question as to the implications, if any, the terms of the written contracts have on the claims brought by Plaintiffs. When based on the contractual language itself without resort to extrinsic evidence, interpretation of a contract is a purely legal question which is susceptible to a motion for judgment on the pleadings. *Cf. Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003) (interpretation of a contract is a pure question of law). As stated herein, the language of the contracts at issue is clear and unambiguous. Therefore, the terms are given their plain meaning. *See Wylie v. State, Idaho Transp. Bd.*, 253 P.3d 700, 706 (Idaho 2011) ("If the contract's terms are clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law and the meaning of the contract and the intent of the parties must be determined from the plain meaning of the contract's own words. If, however, the contract is determined to be

ambiguous, the interpretation of the document is a question of fact which focuses upon the intent of the parties.") (quoting *Page v. Pasquali*, 244 P.3d 1236, 1239 (2010)).

2.      **Defendants' Motion for a Judgment on the Pleadings**

On June 1, 2008, Ms. Hammer signed a City Administrator Employment Agreement ("Employment Agreement") beginning her term of employment with the City. (Dkt. 1-5, Ex. 4.) Thereafter, on January 23, 2012, Ms. Hammer signed the Supplemental Release of Claims ("Supplemental Release") which effectively ended her employment with the City. (Dkt. 11-1, Ex. A.) Defendants argue that under the plain and unambiguous terms of those documents, Ms. Hammer waived and/or released all but two of the claims brought in this case.[3] (Dkt. 18 at 3-5) (Dkt. 27 at 2-3.) Defendants maintain that Ms. Hammer was terminated without cause pursuant to Section 3.A. of the Employment Agreement which triggered both 1) a waiver of any claim arising from a termination without cause pursuant to a severance payment and 2) a release of all claims against the City effective upon receipt of said severance payment. (Dkt. 18 at 4.)[4]

Plaintiffs counter that the Defendants have not shown that, based on the totality of the circumstances, Ms. Hammer intentionally, voluntarily, knowingly, and deliberately waived her non-contract claims. (Dkt. 21 at 9, 12.) Plaintiffs maintain that Ms. Hammer

---

[3] Defendants do not seek dismissal of Counts IX and XI as they do not arise out of the termination and, therefore, were not waived/released under the terms of the contracts. (Dkt. 27.)

[4] Defendants raise other arguments in their Motion but because the Court's finding on the waiver/release argument is dispositive, the Court has not discussed the other grounds raised by the defense.

did not intend to waive any of her non-contract tort or constitutional claims and that she, through her attorney/husband Mr. Donoval, repeatedly advised the City that Ms. Hammer would not waive or release any non-contract claims other than those arising from the severance package. Thus, Ms. Hammer's position is that her intent was that the release only extend to claims arising out of any dispute related to the severance. (Dkt. 21 at 10-11.) Plaintiffs further assert that there is a presumption against waivers and, given the totality of the circumstances here, Ms. Hammer was coerced into signing the release, and the release was not supported by consideration.

> Section 3.A of the Employment Agreement states:
>
> Employer, acting through the Mayor, may terminate Employee's employment, **without cause**, for any reason or no reason. Any such decision to terminate shall occur only after the Mayor consults with each member of the City Council. Upon such termination, Employer shall pay Employee, as severance pay, a lump sum cash payment equal to six (6) months, base salary described in Section 5, Subsection A.
>
> The severance payment herein is intended to be Employee's **sole exclusive remedy** for any and all claims for damages of any kind arising from a termination **without cause** and such severance payment is hereby agreed to be reasonable, fair and equitable by both parties to this Agreement. Accordingly, Employee waives her right to bring a claim of any kind for damages against Employer arising from a termination **without cause**. Consequently, receipt of the severance payment is subject to execution of a release of all claims against the City of Sun Valley. A termination **without cause** shall not entitle Employee to an informal review under any section of the City of Sun Valley Personnel manual ("Personnel Manual").

(Dkt. 1-5, Ex. 4 at 2) (emphasis in original.)

The Supplemental Release signed by Ms. Hammer on January 23, 2012, states:

> Upon payment of the severance payment required pursuant to Section 3.A. of the City Administrator Employment Agreement dated June 1, 2008, I release the City of Sun Valley for any claims defined in Section 3.A. of the City Administrator Employment Agreement as were intended when the City Administrator Employment Agreement was entered into on June 1, 2008.

(Dkt. 21 at 10) (citing Dkt. 11-1, Ex. A.)

Having reviewed the pleadings and documents at issue on this Motion, the Court finds the Employment Agreement and Supplemental Release of Claims to be clear and unambiguous. In Idaho:

> When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. An unambiguous contract will be given its plain meaning. The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole.... Whether a contract is ambiguous is a question of law. A contract is ambiguous if it is reasonably subject to conflicting interpretations.

*Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 291 P.3d 399, 406 (Idaho 2012) (quoting *Bakker v. Thunder Spring–Wareham, LLC*, 108 P.3d 332, 337 (Idaho 2005) (citation omitted)). The meaning of an unambiguous contract must be determined from the plain meaning of the contract's own words. *State v. Hosey*, 11 P.3d 1101, 1104 (Idaho 2000). Where a contract is determined to be ambiguous, interpretation of the contract is a question of fact that focuses on the intent of the parties. *Id.* Whether the facts establish violation of the contract is a question of law over which the court exercises free review. *Id.*

**MEMORANDUM DECISION AND ORDER - 11**

There is no ambiguity in the terms, words, or phrases used in either document as to the particular terms in question here. As discussed below, the terms of the two documents are clear and not subject to conflicting interpretations when viewed as a whole. Accordingly, the Court will consider the terms at issue here from the four corners of the documents giving the plain meaning to the language therein.

### i) Waiver/Release of Claims

In considering the Motion, the Court must first determine whether, as a matter of law, the language of the documents themselves constitutes a waiver and/or release of Plaintiffs' claims.

Again, the Supplemental Release signed by Ms. Hammer on January 23, 2012, states:

> Upon payment of the severance payment required pursuant to Section 3.A. of the City Administrator Employment Agreement dated June 1, 2008, I release the City of Sun Valley for any claims defined in Section 3.A. of the City Administrator Employment Agreement as were intended when the City Administrator Employment Agreement was entered into on June 1, 2008.

(Dkt. 21 at 10) (citing Dkt. 11-1, Ex. A.) Section 3.A. of the Employment Agreement further clarifies that the "severance payment is intended to be Employee's **sole exclusive remedy** for any and all claims for damages of any kind arising from a termination **without cause** and such severance payment is hereby agreed to be reasonable, fair and equitable by both parties to this Agreement." (Dkt. 1-5, Ex. 4 at 2) (emphasis in original.)

The Court concludes that, as a matter of law, this express unambiguous language plainly, clearly, and unambiguously waived and/or released "any and all claims for damages of any kind arising from a termination without cause" that Ms. Hammer may have had and forecloses her "right to bring a claim of any kind for damages against Employer arising from a termination without cause." (Dkt. 1-5, Ex. 4 at 2.) Ms. Hammer was terminated on January 19, 2012. There is no dispute that she accepted a severance payment and signed the release of claims quoted above on January 23, 2012. Thus, the terms of Section 3.A. of the Employment Agreement waiving/releasing "any and all claims" arising from a termination without cause is effective as to any claims in existence as of that date. There simply is no other reasonable interpretation of the express language of the documents which use the phrases: "any and all claims," "sole exclusive remedy," and "right to bring a claim of any kind for damages." The plain meaning of these words, phrases, and terms is abundantly clear.

Plaintiffs contend that Ms. Hammer's termination was not "without cause" and, therefore, not subject to the waiver provision of Section 3.A. of the Employment Agreement.[5] This argument is contrary to the plain and unambiguous language of the Employment Agreement and the undisputed fact that she accepted the severance payment as provided for in Section 3.A. of the Employment Agreement. (Dkt. 1-5, Ex. 4) (Dkt. 11-

---

[5] The Complaint at first acknowledges that the reason for Ms. Hammer's termination from her position as City Administrator on January 19, 2012 was pursuant to the "without cause" terms of her employment contract. (Dkt. 1 at ¶¶ 75, 265) (quotations in original.) The Complaint later alleges that her termination was actually for "cause" and in retaliation for her complaints of harassment and discrimination. (Dkt. 1 at ¶ 266, 305, 402, 438-441) (quotations in original.)

**MEMORANDUM DECISION AND ORDER - 13**

1, Ex. A.) Notably, the release Ms. Hammer signed specifically references Section 3.A. of the Employment Agreement which applies to terminations "without cause." (Dkt. 11-1, Ex. A.) To now argue her termination was for cause is contrary to the plain and unambiguous language of the documents she affixed her signature to. Based on the undisputed facts, the pleadings, and the relevant documents attached thereto, the Court finds as a matter of law that the terms of the contract constitute a waiver and/or release of all of Ms. Hammer's claims with the exception of Counts IX and XI.

ii) **The Waiver/Release was Voluntary, Intentional, and Knowing**

The Court must next determine whether Ms. Hammers' release of her claims was "voluntary, deliberate and informed." *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir. 1989) (a Title VII act claim) (quoting *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1989)) (citations omitted); *see also Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981) ("A release of claims under section 1983 is valid only if it results from a decision that is voluntary, deliberate, and informed."). The validity and interpretation of a release of significant federal rights is governed by federal law. *Salmeron*, 724 F.2d at 1361 (citation omitted). A release of claims for violations of civil and constitutional rights must be voluntary, deliberate and informed. *Id.* That determination is "predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Stroman*, 884 F.2d at 462 (quoting *Coventry v. United States Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988)); (citing *Salmeron*, 724 F.2d at 1362 (whether a release was voluntary must be determined

from all the circumstances); *Jones*, 648 F.2d at 1203 (whether release was voluntary depends on both objective and subjective factors)). "Of primary importance in this calculation is the clarity and lack of ambiguity of the agreement,...the plaintiff's education and business experience,...the presence of a noncoercive atmosphere for the execution of the release,...and whether the employee had the benefit of legal counsel." *Stroman*, 884 F.2d at 462 (citations and quotations omitted). The Supreme Court has held that "a waiver of constitutional rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 94 (1972).

Accepting the facts as stated in the pleadings as true, the Court finds the totality of the circumstances evidences that Ms. Hammer made a voluntary, deliberate and informed waiver of any and all of her claims when she accepted the agreed to severance payment. Ms. Hammer signed the release after being advised by her legal counsel and husband on the matter. The plain and unambiguous terms make abundantly clear that the acceptance of the severance payment waives and/or releases any and all claims Ms. Hammer may have had for damages arising from her termination. Although Plaintiffs now argue they did not know or intend to give up their non-contract tort and constitutional claims, the fact remains that the plain and express terms of the documents they signed clearly state otherwise. Ms. Hammer is a knowledgeable person who worked in a professional capacity for the City for several years and was advised by her legal counsel and husband before signing the release. Had the Plaintiffs believed and/or intended something other than what was plainly and explicitly stated in the written documents they could have and

**MEMORANDUM DECISION AND ORDER - 15**

should have included language to that effect in the documents themselves.

Plaintiffs argue a release of constitutional claims must be supported by consideration. (Dkt. 21 at 15-16.) Plaintiffs are correct. "Under federal law, a valid release must be supported by consideration." *Salmeron*, 724 F.2d at 1362 (citing *Maynard v. Durham & S.R. Co.*, 365 U.S. 160, 162–63 (1961) (citations omitted). Here, however, consideration for the release of "any and all claims" was given in the form of the six-months severance pay which Plaintiffs do not dispute having received.

The Plaintiffs' further argue there is an inherent presumption against the waiver of constitutional rights and they could not have prospectively waive their constitutional or statutory rights to claims that had not yet accrued at the time of contracting. (Dkt. 21 at 11-12.) Defendants maintain that even if she did not prospectively waived her claims in the Employment Agreement, she released all claims she had against the City when she executed the Supplemental Release and accepted the severance payment. (Dkt. 27 at 3.)

Generally there cannot be a prospective waiver of an employee's rights. *See EEOC v. Townley Engineering & Mfg. Co.*, 859 F.2d 610, 616 (9th Cir. 1988) (Title VII discrimination case) (citation omitted). Here, however, the contract terms giving rise to the waiver/release became effective on January 23, 2012 when Ms. Hammer signed the Supplemental Release. The actions giving rise to Plaintiffs claims had already occurred by that date and, therefore, the claims were known to Plaintiffs at the time Ms. Hammer signed the Supplemental Release.

Plaintiffs also assert they were coerced into signing the Supplemental Release;

**MEMORANDUM DECISION AND ORDER - 16**

pointing to the harassment by Mr. Ribi prior to her signing and Ms. Hammer's concerns for her "economic wherewithal." (Dkt. 21 at 13-15.) The Complaint alleges that at the time of her termination and the signing of the Supplemental Release, Ms. Hammer and her husband had both been subject to harassment. Those allegations describe the harassing environment Ms. Hammer claims she had endured leading up to and following her termination and the signing of the Supplemental Release. *See e.g.* (Dkt. 1 at ¶ 69, 76, 79, 103, 113, 179, 190-91, 199, 248, 251, 260, 262-70, 305.) There are, however, no factual allegations concerning the actual negotiations or signing of the release; let alone any that go to show Plaintiffs were coerced into signing the Supplemental Release.

Further, the Plaintiffs' response brief actually demonstrates that Plaintiffs understood the ramifications of signing the release by recognizing the choices Ms. Hammer was faced with: 1) signing the release and receiving the severance or 2) refusing to sign the release and forego any severance. (Dkt. 21 at 13-14.) This demonstrates that Ms. Hammer knew full well what choices she had when she elected to sign the release. Further, given the totality of the circumstances stated above – Ms. Hammer's knowledge and the fact she had been advised by legal counsel – the Court concludes that there are no facts alleged indicating Plaintiffs were coerced. The Plaintiffs' other arguments raised after the fact stating they had different intentions concerning the terms and disclaimers that they believe limited the release or preserved her constitutional claims also fail. The language of the contract could not be clearer. The waiver/release was as to "any and all claims" without any limitations.

**MEMORANDUM DECISION AND ORDER - 17**

Based on the foregoing, the Court finds the claims raised in Counts I-VIII, X, and XII-XIV have been waived and/or released by the express terms of the written documents as they are claims arising out of Ms. Hammer's termination without cause. The remaining claims are Count IX, Deprivation of Due Process against all Defendants, and Count XI, Assault against Mr. Ribi. (Dkt. 1.)

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (Dkt. 18) is **GRANTED**. Counts I-VIII, X, and XII-XIV are **DISMISSED**. The Counts remaining for trial are IX and XI.

DATED: **June 17, 2014**

~~Honora~~ble Edward J. Lodge
U. S. District Judge