UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHARON R. HAMMER and JAMES R. DONOVAL, husband and wife,<br><br>                Plaintiffs,<br><br>    v.<br><br>CITY OF SUN VALLEY; NILS RIBI, in his individual and official capacity; and DEWAYNE BRISCOE, in his individual and official capacity,<br><br>                Defendants. | Case No. 1:13-CV-00211-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

     Pending before the Court in the above-entitled matter is the Defendants' Motion for Summary Judgment. The parties have filed their responsive briefing and the matter is ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER - 1**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Sharon R. Hammer and James R. Donoval, husband and wife, filed a Complaint against Defendant City of Sun Valley ("Sun Valley" or "the City") as well as Defendants Nils Ribi and DeWayne Briscoe in both their individual and official capacity. (Dkt. 1.) The Complaint raised fourteen claims relating to allegations concerning events occurring during and after Ms. Hammer's employment as the City Administrator of Sun Valley from June 1, 2008 until January 19, 2012. (Dkt. 1.) Defendants filed a Motion for a Judgment on the Pleadings seeking to dismiss all but two of the claims pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 18, 41.) This Court entered a Memorandum Decision and Order granting the Defendants' Motion for Judgment on the Pleadings as to Counts 1-8, 10, and 12-14. (Dkt. 41.)[1] The Court has also denied Plaintiffs Motion for Reconsideration and Motion to Amend. (Dkt. 44, 45.) The causes of action remaining in this case are Counts 9 and 11 alleging: 1) a § 1983 claim of Deprivation of Due Process against all Defendants and 2) Assault of Ms. Hammer against Mr. Ribi individually. The Defendants have filed the instant Motion for Summary Judgment as to these two remaining counts. (Dkt. 47.) The Court finds as follows.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered

---

[1] That Order provides a full recitation of the factual basis underlying this matter that is incorporated herein.

**MEMORANDUM DECISION AND ORDER - 2**

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a completely failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co.*

---

[2] *See also,* Rule 56(3) which provides, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM DECISION AND ORDER - 3**

*Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## ANALYSIS

**1.    Section 1983 Deprivation of Due Process Claim - Stigma Plus**

Section 1983 provides a cause of action for violations of a plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009). In this case, Count 9 raises a § 1983 claim alleging the Defendants violated Ms. Hammer's Due Process rights by making stigmatizing and/or substantially false statements regarding or relating to Ms. Hammer and/or her termination.

**MEMORANDUM DECISION AND ORDER - 4**

(Dkt. 1 at ¶ 420.)[3] A claim under 42 U.S.C. § 1983 predicated upon an act of defamation, requires a plaintiff to allege what is often referred to as a "stigma-plus" claim: "a stigmatizing statement" plus a deprivation of a "tangible interest" without due process of law. *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

In order to state such a claim, the plaintiff must show the defendant made a stigmatizing statement or charge that is sufficient to give rise to a protectable liberty interest and that "1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) the charge is made in connection with termination of employment." *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir.1988) (citation omitted); *see also Campanelli v. Brockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "Where these elements exist, the plaintiff is 'entitled to notice and a hearing to clear his [or her] name.'" *Ulrich*, 308 F.3d at 982; *see also Reiber v. City of Pullman*, 918 F.Supp.2d 1091, 1102 (E.D. Wash. 2013) (citing cases).

In this case, the claim alleges that Ms. Hammer was deprived of the liberty interest guaranteed under the Fourteenth Amendment because the Defendants' statements or charges were stigmatizing, were false and/or inaccurate, were made in connection to her January 19, 2012 termination, and she was not afforded a meaningful opportunity for a name-clearing hearing. (Dkt. 1 at ¶¶ 408, 410.) On this Motion, Defendants argue Ms. Hammer cannot demonstrate that her liberty interests were violated because the allegedly

---

[3] The paragraph numbering in the Complaint is duplicative. The Court's citations to the Complaint in this section relate to those paragraphs applicable to Count 9.

**MEMORANDUM DECISION AND ORDER - 5**

stigmatizing statements were true and many were not made in the course of her termination. (Dkt. 47 at 5.) Ms. Hammer counters that her claim is based on the Defendants' repeated and cumulative stigmatizing statements made from November 2011 into January 2013 alleging Ms. Hammer engaged in financial misconduct, criminal conduct, and other disparaging inferences. (Dkt. 56 at 4, 11.) The Court has reviewed the record and finds as follows.

### A. Fourteenth Amendment Liberty Interest

"The Supreme Court has recognized that a liberty interest is implicated where 'a person's good name, reputation, honor or integrity is at stake.'" *Orloff v. Cleland*, 708 F.2d 372, 378 (9th Cir. 1983) (quoting *Roth*, 408 U.S. at 573).[4] A liberty interest has been found where "the employer creates and disseminates a false and defamatory impression about the employee in connection with his [or her] termination." *Brady*, 859 F.2d at 1552 (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977) (citations omitted)). Defamation by a state actor, however, does not amount to a deprivation of "liberty" within the meaning of the Fourteenth Amendment unless it is accompanied by some interest other than mere loss of reputation. *See Paul v. Davis*, 424 U.S. 693, 711 (1976); *see also Buckley v. Fitzsimmons*, 20 F.3d 789, 797 (7th Cir. 1994) ("Slander is not ... a constitutional tort, because a person's interest in his reputation is neither 'liberty'...for purposes of the due

---

[4] The Fourteenth Amendment Due Process Clause protects an individual's property and liberty interests. *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972). Ms. Hammer does not appear to assert a property interest under the Fourteenth Amendment. (Dkt. 1.) Therefore, the Court will analyze this claim only as it alleges a liberty interest under the Fourteenth Amendment.

**MEMORANDUM DECISION AND ORDER - 6**

process clause."). The "liberty interest" implicated under the Fourteenth Amendment on this claim "is the interest an individual has in being free to move about, live, and practice his [or her] profession without the burden of an unjustified label of infamy." *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 366 (9th Cir. 1976) (discussing *Roth*, 408 U.S. at 572).

"A public employer can violate an employee's rights by terminating the employee if in so doing, the employer makes a charge that might seriously damage the terminated employee's standing and associations in his community or imposes on a terminated employee a stigma or other disability that forecloses his freedom to take advantage of other opportunities." *Blantz v. Cal. Dep't of Corrections et al.*, 727 F.3d 917, 925 (9th Cir. 2013) (citations and alterations omitted); *see also Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981) ("To implicate constitutional liberty interests...the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities."). A plaintiff's liberty interest is not implicated unless "the government's stigmatizing statements effectively exclude the employee completely from her chosen profession." *Blantz*, 727 F.3d at 925. "Stigmatizing statements that merely cause reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession do not constitute a deprivation of liberty." *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

"Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest, but less severe accusations must be analyzed on a case-by-case basis, and allegations of mere incompetence or inability are not sufficient." *Blantz*, 727 F.3d at 925 n. 6; *see also Bollow*, 650 F.2d at 1101 ("[A]ccusations of 'moral turpitude,' such as dishonesty or immorality" are sufficiently stigmatizing so as to infringe on an individual's liberty interest.) (citations omitted). "[D]ismissal for reasons of incompetence and inability to get along with co-workers d[oes] not infringe liberty interests." *Bollow*, 650 F.2d at 1101 (citations and quotations omitted). Whether an employer's statements stigmatize an employee is generally a question of fact. *Campanelli*, 100 F.3d at 1480.

The statements identified by Ms. Hammer in this case involve references and/or insinuations about Ms. Hammer being the subject of a criminal investigation, forensic audit, and possible misconduct. Such statements touch on trustworthiness as they relate to Ms. Hammer's conduct while in a position of trust as the City Administrator. Defendants do not contest that the statements are stigmatizing in their briefing on this Motion. (Dkt. 59 at 2) (Ms. Hammer "has failed to meet her burden to actually direct the Court's attention to facts showing how those statements were substantially false or are connected to her termination.") The Court finds for purposes of this Motion that these allegations are sufficiently stigmatizing to implicate Ms. Hammer's liberty interest. *Campanelli,* 100 F.3d at 1480.

**MEMORANDUM DECISION AND ORDER - 8**

### B.     The Elements of the Stigma Plus Claim

The remaining requirements for the stigma plus claim are that Ms. Hammer show that the stigmatizing statements were 1) substantially false and 2) they were made "in the course of" or in connection with her termination. *See Campanelli*, 100 F.3d at 1482-84 (citing *Codd*, 429 U.S. at 627).[5] As to the former, Ms. Hammer must show that the "accuracy of the charges [is] contested." *Orloff*, 708 F.2d at 378 (citation omitted). On the latter, Ms. Hammer must show that the defamatory statements were "so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye," *Ulrich*, 308 F.3d at 983. A strict temporal link between the stigmatizing statements and the nonrenewal or discharge is not required for this element and post-termination statements may be sufficient. *Id*. (citing *Campanelli*, 100 F.3d at 1482).

Count 9 of the Complaint contains seven general allegations relating to statements made by Defendants concerning insinuations of misconduct, an investigation into possible criminal conduct, and a forensic audit. (Dkt. 1 at ¶ 420.) In her response briefing, Ms. Hammer details thirty specific statements that she argues "created the impression that Ms. Hammer had been terminated because of misconduct and that she was a criminal." (Dkt. 56 at 2, 7-11.)[6] These are the statements that form the basis for Ms. Hammer's

---

[5] The parties do not appear to dispute that the statements were publicly disclosed. (Dkt. 47, 56, 59.) Therefore, that requirement of the claim is viewed in favor of Ms. Hammer for purposes of this Motion and need not be analyzed.

[6] The seven statements cited in the Complaint are more generalized allegations of the violating statements. (Dkt. 1 at ¶ 420.) The thirty statements in Ms. Hammer's response brief are specific and particular statements she argues make up this claim. (Dkt. 56 at 7-11.)

**MEMORANDUM DECISION AND ORDER - 9**

§ 1983 claim. The Court has reviewed the generalized allegations in the Complaint and each of the particular statements listed in Ms. Hammer's response brief. (Dkt. 1, 56.) In particular, the Court has reviewed the actual documents in the record that contain the statements identified by Ms. Hammer that make up the claim. (Dkt. 48, Exs. 14, 15, 23-26, 28-31, and 36-41.)[7] The statements can generally be grouped into those statements appearing in the local newspaper, press releases issued by the City, Mr. Ribi's blog posts, and statements made by City officials in separate judicial proceedings. Again, the statements involve references and/or insinuations about Ms. Hammer's termination, the criminal investigation, forensic audit, and an internal report concerning possible misconduct at the City. Based on this review, the Court finds Ms. Hammer has failed identify any statements which satisfy the requirements for a § 1983 stigma plus claim.

Many of the statements identified by Ms. Hammer to support this claim are statements and/or articles that appeared in the local newspaper, the Idaho Mountain Express ("IME"), between November 2011 and January of 2013. (Dkt. 48, Exs. 14, 23, 28-31.) The IME articles reported the events occurring at the City during this time period including the completion, findings, and outcomes of the internal report, the forensic audit, and a criminal investigation. The articles often contained quotes by City officials concerning these matters and included references to Ms. Hammer's termination. Upon reviewing these articles and the particular statements made therein as identified by Ms.

---

[7] Although the Court has cited to particular documents in the record, the Court makes clear that it has reviewed all of the materials provided by the parties in this matter as they relate to the claims in this case.

**MEMORANDUM DECISION AND ORDER - 10**

Hammer, however, the Court finds these articles and the statements contained within them are not false or inaccurate.

The articles are the IMS's reporting of the goings-on of the City during that time which included the occurrence of the investigations and audits which implicated Ms. Hammer. Ms. Hammer clearly disputes the outcomes and results of these investigations and audits.[8] The fact that Ms. Hammer disagrees with the outcome of those proceedings, however, does not make them untrue. The articles and statements made in these articles were not false or inaccurate. There was in fact a forensic audit, a criminal investigation, and an internal review report completed which related to certain "irregularities" and "mismanagement" at the City while Ms. Hammer was the City Administrator. It was not false or inaccurate for the IME to have reported these facts and/or to state that Ms. Hammer was the City Administrator and had been terminated during the same time period. Ms. Hammer asserts that the Defendants should have clarified that her termination was not because of the investigations or audit. (Dkt. 56 at 2.) Again, the statements in the articles were factually correct. Even if the IME articles did cast Ms. Hammer in an unflattering light and/or implicated her involvement in the investigative matters that were

---

[8] The Complaint refers to the allegations of financial misconduct as being based on "unsupported, ill-gotten, and/or allegedly accusatory confidential employment documents and other information...." (Dkt. 1 at ¶ 188.) Other paragraphs in the Complain challenge the truthfulness of the written internal report alleging its only purpose was to destroy Ms. Hammer's personal and professional reputation in retaliation for her having filed another case. (Dkt. 1 at ¶¶ 244-49.) Further paragraphs question the truthfulness of the forensic audit and other reports and allege the Defendants made statements that "implied" wrong doing by Ms. Hammer. (Dkt. 1 at ¶¶ 284-85, 287-90, 293, 295.)

**MEMORANDUM DECISION AND ORDER - 11**

occurring, the facts reported were true. Because they were not false or inaccurate, the Court finds that these statements do not support the § 1983 claim.

Likewise, the Court finds the press releases issued by the City were not false or inaccurate. (Dkt. 1 at ¶¶ 274-277, 285, 303) (Dkt. 48, Exs. 25-26.) The press releases stated that Ms. Hammer had been terminated from her employment with the City which was a true and correct statement of fact. Ms. Hammer takes issue with the failure of the press release to state that her termination was "without cause." That omission, however, does not render the statement to be substantially false or inaccurate. While perhaps not worded favorably towards Ms. Hammer, the statements in the press releases were true as to the facts stated therein.

As to Mr. Ribi's blog posts, the Court finds those statements also do not support the claim raised in Count 9 because they too were not false. (Dkt. 1 at ¶¶ 304, 307, and 420) (Dkt. 48, Ex. 38.) The blog postings commented on the City's investigations and Ms. Hammer's termination. Their tone casts Ms. Hammer in an unfavorable light. The statements concerning the dismissal of Ms. Hammer's lawsuit against Mr. Ribi and the events surrounding the same as well as his post that Ms. Hammer had been fired, however, were factually true. For these reasons, the Court finds this statement does not support the claim raised in Count 9.

As to the statements made by City officials and others in separate judicial proceedings, the Court finds these statements also do not support Ms. Hammer's claim. (Dkt. 48, Exs. 15, 24, and 36-41.) Statements made in response to litigation commenced

**MEMORANDUM DECISION AND ORDER - 12**

by Ms. Hammer in the separate judicial proceeding cannot be used to form the basis for her § 1983 claim. *See Bishop v. Wood*, 426 U.S. 341, 348-49 (1976); *see also Loehr v. Ventura County Comm. College Dist.*, 743 F.2d 1310, 1318 (9th Cir. 1984). Further, the statements made in the separate judicial proceeding were not made in connection to Ms. Hammer's termination. "[T]here must be some temporal nexus between the employer's statements and the termination." *Campanelli*, 100 F.3d at 1483. While actionable stigmatizing statements can occur after termination, the statements must still be "so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." *Campanelli*, 100 F.3d at 1482. The statements made by City officials in the separate judicial proceeding were made in response to Ms. Hammer's IPPEA case, not in connection to her termination.

Based on the foregoing, the Court finds that the statements alleged by Ms. Hammer do not satisfy the requirements for this claim. Accordingly, the Court will grant the Motion for Summary Judgment at to Count 9.

**2.    Assault**

Count 11 of the Complaint alleges Mr. Ribi assaulted Ms. Hammer on September 15, 2011. Defendants seek summary judgment on this claim arguing there is insufficient evidence from which a reasonable jury could find that Mr. Ribi assaulted Ms. Hammer and, further, that Mr. Ribi is afforded immunity under the Idaho Tort Claims Act ("ITCA"). (Dkt. 47 at 5.) Ms. Hammer maintains her allegations are sufficient to give rise to a genuine issue of material fact as to the assault claim. (Dkt. 56 at 16-17.)

**MEMORANDUM DECISION AND ORDER - 13**

The assault claim is brought pursuant to state law under Idaho Code § 18-901. All of the claims in this case that gave rise to original federal jurisdiction have now been dismissed. "Where a district court 'dismiss[es] every claim over which it had original jurisdiction,' it retains "pure[ ] discretion[ ]" in deciding whether to exercise supplemental jurisdiction over the remaining claims." *Lacey v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012) (quoting *Carlsbad Tech., Inc. V. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)); *see also* 28 U.S.C. § 1367(c). "In exercising its discretion to decline supplemental jurisdiction, a district court must undertake a case-specific analysis to determine whether declining supplemental jurisdiction 'comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness and comity.'" *Bahrampour v. Lampert*, 356 F.3d 969, 978-79 (9th Cri. 2004) (quoting *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557–58 (9th Cir. 1994)) (internal quotations and citations omitted).

The Court has reviewed the entire record in this case and, having done so, will decline to exercise supplemental jurisdiction over the sole remaining state law claim for assault. All of the other claims giving rise to this Court's original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). While this Court recognizes that it may retain supplemental jurisdiction, the general considerations underlying the exercise of supplemental jurisdiction do not support doing so for the assault claim in this case. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("judicial economy, convenience, fairness, and comity"—counseled dismissal of the state-law claims.).

**MEMORANDUM DECISION AND ORDER - 14**

In general, the other claims in this case related to Plaintiffs' allegations of wrongful conduct by the Defendants towards Ms. Hammer and Mr. Donoval during and relating to Ms. Hammer's term of employment and termination from the City of Sun Valley. (Dkt. 1.) However, the sole remaining state law claim alleges that Mr. Ribi, while acting in his individual capacity, assaulted Ms. Hammer. (Dkt. 1 at ¶¶ 420-424.) [9] Ms. Hammer argues in her response brief that Mr. Ribi was acting outside the scope of his duties of a Sun Valley City Council member when he assaulted her. (Dkt. 56 at 18-19) ("No aspect of his conduct in committing the assault was part of his duties as a City Council member."). Further, resolution of the claim, while not particularly complex, involves application of state law; in particular, whether the Defendants are entitled to immunity under the ITCA.[10] For these reasons, the Court finds the considerations of

---

[9] Ms. Hammer's allegations relate to events occurring on September 15, 2011. During a break of the City Council meeting on that day, Mr. Ribi and Ms. Hammer were discussing the accounting practices and procedures for modifying municipal budgets. Ms. Hammer alleges that Mr. Ribi became angry, raised his arms in the air, waived his hands, and in a physically threatening manner yelled at her. (Dkt. 1 at ¶¶ 154-160.) Ms. Hammer alleges she was fearful of harmful or offensive contact with her body by Mr. Ribi and that she reported the incident. (Dkt. 1 at ¶¶ 158, 161.)

[10] The Idaho Tort Claims Act ("ITCA"), specifically Idaho Code § 6–903, "establishes that governmental entities are subject to liability for their own negligent or wrongful acts, and those of their employees who were acting within the course and scope of their employment." *Hoffer v. City of Boise*, 257 P.3d 1226, 1228 (Idaho 2011). However, Idaho Code § 6–904(3) expressly exempts certain causes of action from the general rule that the governmental entity is subject to liability. *Id.* In this respect, the ITCA reads:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which ... [a]rises out of assault, battery, false

**MEMORANDUM DECISION AND ORDER - 15**

fairness and comity weigh against exercising supplemental jurisdiction over the sole remaining state law claim in this case. Therefore, the assault claim is dismissed.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED the Defendants' Motion for Summary Judgment (Dkt. 47) is **GRANTED**.

DATED: **July 28, 2015**

Honorable Edward J. Lodge
U. S. District Judge

---

imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contractual rights.

Idaho Code § 6–904(3). Thus, the "ITCA immunizes public officials from some tort claims if the plaintiff does not show malice or criminal intent." *Miller*, 252 P.3d at 1287. Whether an individual is acting within the scope of his duties under Idaho Code § 6-904 is determined by Idaho's law of respondeat superior. *Teurlings v. Larson*, 320 P.3d 1224, 1232-33 (Idaho 2014) (applying Idaho Code § 6-904(4)).

**MEMORANDUM DECISION AND ORDER - 16**