# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| SHARON R. HAMMER and JAMES R. DONOVAL, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SUN VALLEY; NILS RIBI, in his individual and official capacity; and DeWAYNE BRISCOE, in his individual and official capacity,<br><br>Defendants. | Case No.: 1:13-cv-211-EJL<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFFS' MOTION TO OVERRULE ASSERTIONS OF ACCOUNTANT-CLIENT AND ATTORNEY-CLIENT PRIVILEGE AND TO COMPEL RESPONSES**<br><br>**(Docket No. 131)**<br><br>**DEFENDANTS' MOTION TO DISQUALIFY JAMES R. DONOVAL**<br><br>**(Docket No. 137)** |

Now pending before the Court are (1) Plaintiffs'[1] Motion to Overrule Assertions of Accountant-Client and Attorney-Client Privilege and to Compel Responses (Docket No. 131), and (2) Defendants' Motion to Disqualify James R. Donoval (Docket No. 137). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

This action is lamentably over five years old and, while a portion of that time was devoted to an appeal before the Ninth Circuit, its crawl toward a conclusion here is partly

---

[1] Questions persist as to who, exactly, is a Plaintiff in this action. For example, at times, Plaintiffs' filings (including certain of those involved here) contain a caption that references only Plaintiff Sharon Hammer. *See also, e.g.*, Defs.' Resp. to Mot. to Re-Open Disc., p. 1 n.1 (Docket No. 113) ("It is unclear and questionable why Plaintiff Hammer has unilaterally modified the caption in this case to exclude Plaintiff Donoval in this matter."). To be clear, Plaintiffs Hammer and Donoval are the Plaintiffs in this action and, unless otherwise indicated, "Plaintiff" and "Plaintiffs" are used interchangeably herein – any technical distinction/difference is immaterial for the purposes of this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 1**

attributable to the constellation of claims pursued elsewhere and, in some measure, the parties' difficulty in agreeing upon the best way to focus the case for trial. These Motions are a continuation of that pattern, with (1) Plaintiffs requesting that certain objections (based on the accountant-client and attorney-client privileges) raised during the May 18, 2018 deposition of John Curran be overruled and that Mr. Curran be re-deposed; and (2) Defendants seeking the disqualification of Plaintiff James R. Donoval (a lawyer) from further representing Plaintiff Sharon Hammer (Mr. Donoval's wife) in this lawsuit. The relevant factual backdrop for each such Motion is set forth in chronological order as follows:

**A.    Plaintiffs' Motion to Overrule Assertions of Accountant-Client and Attorney-Client Privilege and to Compel Responses (Docket No. 131)**

1. Plaintiffs filed this case on May 3, 2013, asserting 14 Counts against Defendants, seeking relief under various federal and state statutes related to Plaintiff Hammer's termination as the Sun Valley City Administrator in January 2012. *See* Compl. (Docket No. 1).

2. On February 5, 2014, Defendants filed a Motion for Judgment on the Pleadings, requesting dismissal of certain identified Counts within Plaintiffs' Complaint. *See* Defs.' 12(c) Mot. for J. on the Pldgs. (Docket No. 18).

3. On June 17, 2014, U.S. District Judge Edward J. Lodge granted Defendants' Motion for Judgment on the Pleadings and dismissed Counts 1-8, 10, and 12-14 of Plaintiffs' Complaint (leaving Counts 9 and 11 for trial). *See* 6/17/14 MDO (Docket No. 41).

4. On June 27, 2014, Defendants moved for summary judgment on Counts 9 and 11 of Plaintiffs' Complaint. *See* Defs.' MSJ (Docket No. 47).

5. On July 28, 2015, Judge Lodge granted Defendants' Motion for Summary Judgment, dismissed Counts 9 and 11 of Plaintiffs' Complaint, and dismissed the case in its entirety. *See* 7/28/15 MDO & J. (Docket Nos. 71 & 72).

**MEMORANDUM DECISION AND ORDER - 2**

6. On August 11, 2015, Plaintiffs filed a Motion for Reconsideration of Entry of Summary Judgment (amended on August 28, 2015) related to the dismissal of her liberty interest, stigma plus claims (Count 9). *See* Mots. to Recon. (Docket Nos. 77 & 81).

7. On August 27, 2015, Plaintiffs filed a Notice of Appeal, appealing Judge Lodge's above-referenced June 17, 2014 and July 28, 2015 Orders (granting Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment). *See* Not. of Appeal (Docket No. 80).

8. On January 29, 2016, Defendants issued a Notice of Intent to Subpoena Documents from Third-Party, informing Plaintiffs' counsel that, on February 1, 2016, Defendants intended to serve non-party Hagen, Streiff, Newton & Oshiro ("HSNO") a subpoena for production of documents. *See* Not. of Intent to Subpoena Docs. from Third-Party, attached as Ex. D to Emergency Mot. to Quash Third-Party Subpoena (Docket No. 87). HSNO is an accounting firm that Plaintiff Hammer sued for defamation in a separate case in Idaho state court related to allegedly-false statements made in a forensic audit report issued by HSNO pertaining to Plaintiff Hammer's conduct as the Sun Valley City Administrator. *See* Emergency Mot. to Quash Third-Party Subpoena, p. 3 (Docket No. 87).

9. On February 1, 2016, Plaintiffs filed an Emergency Motion to Quash Third-Party Subpoena, requesting that Defendants' subpoena to HSNO be quashed. *See id*. at p. 5 ("As (a) the entire case herein has been dismissed subject only to the Motion to Reconsider, (b) all discovery in the matter has been closed since at least May 14, 2014, and (c) the documents being sought by the Defendant are subject to the confidentiality provision of the Settlement Agreement, [Plaintiffs] seek that the Court quash the Subpoena pursuant to its authority under FRCP 45.").

10. On March 10, 2016, Judge Lodge denied Defendants' Motions for Reconsideration. *See* 3/10/16 MDO (Docket No. 94).

**MEMORANDUM DECISION AND ORDER - 3**

11. On May 11, 2016, Defendants withdrew their subpoena to HSNO, indicating nonetheless that they "do not intend to waive any right to re-issue the subpoena if it becomes necessary to do so based on arguments made by Plaintiff in the pending appeal." Defs.' Not. of Withdrawal of Third-Party Subpoena, p. 1 (Docket No. 99). That same day, the Court denied Plaintiffs' Emergency Motion to Quash Third-Party Subpoena as moot. *See* 5/11/16 Docket Entry Order (Docket No. 100).

12. On August 11, 2017, the Ninth Circuit, affirmed, in part, reversed, in part, and remanded the action back to this Court, stating:

> To conclude, we affirm the district court's grant of the 12(c) motion; the denial of Hammer's motion to convert; and the denial of Hammer's motion to amend. We reverse the district court's judgment of Hammer's unconstitutional bias claim; liberty interest, stigma plus claim; the claims against Ribi and Briscoe in their individual capacities; Donoval's claim; and the entry of costs . . . .
>
> **AFFIRMED in part, REVERSED in part, and REMANDED.**

8/11/17 Mem., p. 4 (Docket No. 104) (emphasis in original).

13. On October 5, 2017, Judge Lodge directed the parties "to confer with one another and jointly file a notice with the Court indicating how the parties would propose or intend to proceed in light of the Ninth Circuit's decision." 10/5/17 Order, p. 1 (Docket No. 107).

14. On November 1, 2017, the parties filed a Joint Notice of Intent to Proceed. *See* Joint Not. (Docket No. 108). The parties' Notice spoke to the need for "additional discovery," stating in relevant part:

> Previously, Defendant filed a third-party subpoena to HSNO seeking supplemental materials that did not exist during the original period of discovery that Plaintiffs moved to quash. Ultimately, Defendants withdrew that subpoena due to the Court dismissing Plaintiffs' motion for reconsideration. Now that the mandate has revived certain claims, the parties have agreed that the subpoena can now proceed without objection, and the discovery can be produced by HSNO. *Further, any depositions or supplemental discovery pertaining to the subject matter of the HSNO subpoena would also be permitted.*

*Id*. at pp. 1-2 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 4**

15. On November 22, 2017, Judge Lodge issued an Amended Scheduling Order, memorializing the parties' preferences as relayed in the Notice and indicating that "[t]he additional discovery anticipated and as stated in the Notice shall be completed by May 22, 2018." *See* 11/22/17 Am. Sched. Order, p. 1 (Docket No. 109).

16. On May 3, 2018 (presumably following the response to Defendants' renewed subpoena to HSNO), Plaintiffs subpoenaed John Curran to appear and testify at a deposition on May 18, 2018 in Seattle, Washington. *See* Subpoena to Test, attached as Ex. N to Mem. in Supp. of Mot. to Overrule and Compel (Docket No. 131, Att. 16). Mr. Curran was the principal HSNO accountant responsible for the HSNO forensic audit report. *See* Mem. in Supp. of Mot. to Overrule and Compel, p. 3 (Docket No. 131).

17. Mr. Curran's deposition took place on May 18, 2018 in Seattle, Washington, during which time Plaintiffs claim that Defendants' and Mr. Curran's attorneys made numerous objections to matters related to the HSNO forensic audit report, and refused to allow Mr. Curran to answer questions related to the content of discussions he held with various Sun Valley officials and individuals that he interviewed during the course of the HSNO forensic audit report. *See id*. at p. 13 ("In particular, when Ms. Hammer's counsel sought information related to what was discussed with the (10) individuals who Mr. Curran interviewed as part of the Forensic Audit, Sun Valley's and Mr. Curran's attorneys directed Mr. Curran not to answer. In addition, when Ms. Hammer's counsel asked for information related to the discussions that occurred during an eight (8) hour meeting between Mr. Curran, Attorney Gill, Defendant Briscoe and Administrative Assistant Virginia Egger on August 9, 2012, Sun Valley's attorneys and Mr. Curran's attorney prohibited him from answering.").

18. On May 19, 2018, Plaintiff Donoval sent an email to counsel for Defendants and Mr. Curran's counsel, objecting to the assertions of accountant-client or attorney-client

**MEMORANDUM DECISION AND ORDER - 5**

protections and, relatedly, their instructions to Mr. Curran that he should not answer certain questions related to the HSNO forensic audit report, including the production of the retainer agreements between HSNO and Defendants. *See* 5/19/18 email, attached as Ex. R to Mem. in Supp. of Mot. to Overrule and Compel (Docket No. 131, Att. 20).

19. On May 22, 2018, Defendants' counsel responded, reasserting the privileges from Mr. Curran's deposition and the purported legal bases for doing so. *See* 5/22/18 Ltr., attached as Ex. S to Mem. in Supp. of Mot. to Overrule and Compel (Docket No. 131, Att. 21).

20. Consistent with Judge Lodge's November 22, 2017 Amended Scheduling Order, the limited discovery period closed on May 22, 2018.

21. On July 3, 2018, Plaintiffs filed the at-issue Motion, requesting that the accountant/attorney-client-related objections raised during Mr. Curran's May 18, 2018 deposition be overruled, that Mr. Curran be compelled to respond to matters related to the HSNO forensic audit report, and that Mr. Curran be re-deposed in Boise, Idaho at the expense of Defendants and/or Mr. Curran. *See* Mot. to Overrule and Compel, pp. 5-6 (Docket No. 131).

**B.   Defendants' Motion to Disqualify James R. Donoval (Docket No. 137)[2]**

1. When Plaintiffs initiated this action on May 3, 2013, they were represented by attorneys Eric B. Swartz and Joy M. Vega. *See* Compl. (Docket No. 1).

2. On March 4, 2015, attorneys Swartz and Vega moved to withdraw as counsel for Plaintiffs. *See* Mot. to Withdraw (Docket No. 61). The Court granted the Motion on March 16, 2015, giving Plaintiffs 21 days "to file written notice with the Court stating how and by whom they will be represented." 3/16/15 Order, p. 2 (Docket No. 63).

---

[2] To add additional context to the factual underpinnings of Defendants' Motion to Disqualify, it may be helpful to cross-reference its predicate facts with the timeline outlined above as to Plaintiffs' Motion to Overrule Assertions of Accountant-Client and Attorney-Client Privilege and to Compel Responses. *See supra.*

**MEMORANDUM DECISION AND ORDER - 6**

3. On April 13, 2015, Plaintiff Donoval filed an Appearance (presented via CM/ECF as a motion) in which he entered a pro se appearance on his own behalf and a formal appearance on behalf of Plaintiff Hammer. *See* Appearance (Docket No. 66). Therein, Plaintiff Donoval indicated that "[n]otice is provided to the Court that depending on findings in pending rulings, that should the Court set a new trial date, that Counsel expects to retain separate trial counsel for himself and Sharon R. Hammer in the matter." *Id*.

4. On April 21, 2015, Defendants objected to Plaintiff Donoval's Appearance, arguing that (1) it was not made within the 21-day window as prescribed by the Court within its March 16, 2015 Order; and (2) Plaintiff Donoval has an "apparent conflict representing his wife in this case where there is also a claim by him and he is obviously very personally invested in how his wife's lawsuit turns out." Obj. to Pls.' Not. of App., pp. 1-2 (Docket No. 67) (citing Idaho R. Prof'l Conduct 1.7, 2.1 & 3.7). Further, in addition to lodging their objection, Defendants reserved the right to disqualify Plaintiff Donoval at a later time, if necessary. *See id*. at p. 2.

5. On April 22, 2015, Plaintiffs responded to Defendants' objection, claiming that the Appearance complied with the Court's March 16, 2015 Order and the Local Civil Rules, while citing caselaw from this Court "rejecting the notion that any attorney, who will also be a witness at trial, cannot act as counsel up to trial." Reply in Supp. of Not. of App., pp. 1-5 (Docket No. 68).

6. On April 23, 2015, Judge Lodge ruled that Plaintiff Donoval's Appearance was timely and granted and confirmed that Plaintiff Donoval is appearing pro se in this matter and that Plaintiff Hammer is being represented by Plaintiff Donoval. *See* 4/23/15 Order (Docket No. 69). Concerning the issue of a possible conflict of interest in allowing Plaintiff Donoval to represent Plaintiff Hammer, Judge Lodge stated:

**MEMORANDUM DECISION AND ORDER - 7**

> At this stage, there is no formal Motion before it to disqualify Mr. Donoval as counsel for Ms. Hammer nor any apparent legal basis for the Court doing so *sua sponte*. Mr. Donoval is an attorney, licensed to practice law before all courts in the state of Idaho. As such, the Court will direct that the Clerk of the Court note in the record of this case that, as of the time of the filing of the Notice of Appearance, Mr. Donoval is appearing pro se and that Ms. Hammer is being represented by Mr. Donoval.

*Id.* at p. 3 (citing Compl. at ¶ 8 (Docket No. 1); Appearance (Docket No. 66) (noting Plaintiff Donoval's Idaho State Bar Number)).

7. On August 11, 2015 (after Judge Lodge granted Defendants' Motion for Summary Judgment and dismissed the case in its entirety and before Plaintiffs' Notice of Appeal (*see supra*)), attorney Wyatt Johnson filed a Notice of Appearance on behalf of Plaintiff Hammer and Plaintiff Donoval. *See* Not. of App. (Docket No. 73).

8. After this case became active again in October 2017 following the Ninth Circuit's remand, Mr. Donoval continued to be counsel of record for Plaintiff Hammer despite attorney Johnson's concurrent representation. According to Defendants, "the time is now ripe to address whether [Plaintiff] Donoval's disqualification is appropriate." Mem. in Supp. of Mot. to Disq., p. 3 (Docket No. 137, Att. 1). In turn, on August 1, 2018, Defendants filed the at-issue Motion, requesting that Plaintiff Donoval be disqualified as Plaintiff Hammer's counsel pursuant to Rules 1.7(a)(2), 1.8(i), and 3.7 of the Idaho Rules of Professional Conduct. *See* Mot. to Disq. (Docket No. 137).

## II. DISCUSSION

**A. Plaintiffs' Motion to Overrule Assertions of Accountant-Client and Attorney-Client Privilege and to Compel Responses (Docket No. 131)**

Disputes regarding subpoenas served on non-parties implicate FRCP 45. Significant changes were made to Rule 45 in 2013, with a number of amendments going into effect on December 1, 2013. See *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 42 (D.D.C. 2014). "In its order adopting the 2013 amendments to Rule 45, the Supreme Court specified the amendments

**MEMORANDUM DECISION AND ORDER - 8**

would govern in all proceedings commenced after December 1, 2013, and, 'insofar as just and practicable, all proceedings then pending.'" *Garden City Emps.' Retirement Sys. v. Psychiatric Solutions, Inc.*, 2014 WL 272088, *3 (E.D. Pa. 2014).

This case began on May 3, 2013, but the disputed subpoena was served 5 years later to the day (May 3, 2018). Plaintiffs' pending Motion followed two months later, on July 3, 2018. Therefore, while the lawsuit began before December 1, 2013, the subpoena dispute arose much later, long after the December 1, 2013 effective date of the Rule 45 amendments. It is entirely "just and practicable" for the Court to apply the current version of Rule 45, and the Court finds it proper to do so.

Prior to the 2013 amendments, subpoenas for depositions or production of documents were issued from the court for the district where compliance was required, and the power to quash or modify any issued subpoenas was reserved to *that* court. *See Wultz*, 304 F.R.D. at 42. The amendments changed that. Rule 45 now requires that "[a] subpoena must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). However, the authority to decide a motion to compel arising out of that subpoena is vested with the court where compliance is required. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party *may move the court for the district where compliance is required* for an order compelling production or inspection. (emphasis added));[3] Fed. R. Civ. P. 37(a)(2) ("A motion for

---

[3] This is reflected elsewhere in Rule 45 as well. *See* Fed. R. Civ. P. 45(d)(3)(A) ("On timely motion, *the court for the district where compliance is required* must quash or modify a subpoena that . . . ." (emphasis added)); Fed. R. Civ. P. 45(e)(2)(B) (after being notified of privileged information being produced in response to subpoena, receiving party "may promptly present the information under seal *to the court for the district where compliance is required* for a determination of the claim." (emphasis added)); Adv. Comm. Notes to 2013 Amend. to Rule 45 ("Under Rules 45(d)(2)(B), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made *to the court where compliance is required under Rule 45(c)*. Rule 45(f) provides authority for that court to transfer the motion to the court where the action is pending. It applies (Continued)

**MEMORANDUM DECISION AND ORDER - 9**

an order to a party must be made in the court were the action is pending. *A motion for an order to a nonparty must be made in the court where discovery is or will be taken*." (emphasis added)); Adv. Comm. Notes to 2013 Amend. to Rule 45 ("Subpoenas are essential to obtain discovery from nonparties. To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that *motions be made in the court in which compliance is required* under Rule 45(c)." (emphasis added)).[4]

In short, subpoenas are issued from the court where the action is pending; motion practice arising out of those subpoenas is decided by the court where compliance is required (unless that court transfers the dispute to the court where the action is pending). Therefore, this Court is not authorized to consider Plaintiffs' Motion. Though it issued the May 3, 2018 subpoena for Mr. Curran's deposition, his May 18, 2018 deposition took place in Seattle, Washington, in the Western District of Washington. It is that federal district court where Plaintiffs' Motion is properly pursued. Plaintiffs' Motion is denied, without prejudice.

**B.  Defendants' Motion to Disqualify James R. Donoval (Docket No. 137)**

    1.    <u>Disqualification of Counsel Standard</u>

"Motions to disqualify counsel are decided under state law." *Pesky v. United States*, 2011 WL 3204707 (D. Idaho 2011) (citing *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)). The Court considers the Idaho Rules of Professional Conduct as adopted and interpreted

---

to all motions under this rule, including an application under Rule 45(e)(2)(B) for a privilege determination." (emphasis added)).

[4] Rule 45(f) (new as of 2013) permits a transfer of such motions to the issuing court: "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). If necessary to enforce the resulting order, the issuing court may transfer the matter back to the court where compliance is required. *See id*.

**MEMORANDUM DECISION AND ORDER - 10**

by the Idaho Supreme Court. *See Parkland Corp. v. Maxximum Co.*, 920 F. Supp. 1088, 1091 (D. Idaho 1996); *see also* Mark J. Fucile, *Applied Legal Ethics: Disqualifying Counsel in Idaho State and Federal Courts*, 60 Advocate 41, 42 (2017) (Idaho Rules of Professional Conduct "effectively supply the substantive law on whether an ethics violation warranting disqualification has occurred.").

"The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers." *United States v. Obendorf*, 2016 WL 1595347, *2 (D. Idaho 2016) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)). "Regarding motions to disqualify counsel in Idaho generally, it is clear that "[t]he moving party has the burden of establishing grounds for disqualification.'" *Parkland Corp.*, 920 F. Supp. at 1091 (quoting *Weaver v. Millard*, 819 P.2d 110, 115 (Idaho Ct. App. 1991)). Moreover, "[t]he cost and inconvenience to clients and the judicial system for misuse of the rules for tactical purposes is significant [and] [b]ecause of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny.'" *Optyl Eyewear Fashion Int'l Corp. v. Style Co., Ltd*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quoting *Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)).[5]

When deciding whether to disqualify counsel, "[the] goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process.

---

[5] Plaintiffs argue that Defendants (as opposed to a client in a typical attorney-client relationship) do not have standing to bring their Motion to Disqualify based on an alleged conflict between Plaintiff Hammer and Plaintiff Donoval. *See* Opp. to Mot. to Disq., pp. 6-7 (Docket No. 140). While generally the case, this is not an absolute rule. *See Weaver*, 819 P.2d at 116 (discussing four-part test to determine whether appearance of impropriety alone will give party standing to interfere with adverse party's choice of counsel). Despite their arguments to the contrary, Plaintiffs implicitly agree, acknowledging in no uncertain terms that "[w]here a motion to disqualify *comes from opposing counsel*, the motion should be reviewed with caution." *Id*. at p. 5 (emphasis added). Because Defendants' Motion to Disqualify is denied for substantive reasons, the Court need not separately address Defendants' standing to bring the Motion itself.

**MEMORANDUM DECISION AND ORDER - 11**

Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client." *Weaver*, 819 P.2d at 115.

    2.    <u>There Is No Basis to Disqualify Plaintiff Donoval as Plaintiff Hammer's Counsel at This Time</u>

Defendants argue that Plaintiff Donoval has "run afoul of three rules of the Idaho Rules of Professional Conduct" while representing Plaintiff Hammer, "necessitating disqualification from further proceedings." Mem. in Supp. of Mot. to Disq., p. 4 (Docket No. 137, Att. 1). Specifically, Defendants contend that Plaintiff Donoval is (1) in violation of Rule 1.8(i), which prohibits representation when an attorney has acquired a proprietary interest in the subject matter of the litigation; (2) in violation of Rule 1.7, which prohibits representation when there is a conflict of interest with a current client; and (3) prohibited from representing Plaintiff Hammer as trial counsel and in pre-trial matters under Rule 3.7's advocate-witness rule. *See id*. The Court is not persuaded on this record.

    a.    *Rule 1.8(i)*

Rule 1.8 sets forth specific rules regarding conflicts of interest with current clients, providing in relevant part:

> (i)    A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
>
>     (1)    acquire a lien authorized by law to secure the lawyer's fee or expenses; and
>
>     (2)    contract with a client for a reasonable contingent fee in a civil case.

Idaho R. Prof'l Conduct 1.8(i). Defendants submit that, by representing Plaintiff Hammer, Plaintiff Donoval maintains an impermissible proprietary interest because (1) he has a community property interest in any potential award to his client/Plaintiff Hammer; and (2) his retaliation claim is dependent upon the success of his client's/Plaintiff Hammer's claims. *See*

Mem. in Supp. of Mot. to Disq., pp. 4-8 (Docket No. 137, Att. 1). In the Court's view, the threat of Plaintiff Donoval's legal representation is overstated.

As Plaintiff Hammer's husband, Plaintiff Donoval has a pecuniary interest in his wife's claims because of their marriage and the community property laws in Idaho.[6] But that legal relationship does not *ipso facto* preclude an attorney from representing his/her spouse in a claim for monetary damages. The cases relied upon by Defendants only describe that (1) attorneys should not acquire an ownership interest in the subject of their representation, and (2) property acquired during marriage is community property. *See id*. at pp. 4-7. They do not create a "if this then that" basis for disqualifying Plaintiff Donoval under Rule 1.8(i) without actually going through the process of connecting those conceptual dots in any real legal sense. *See, e.g., id*. at p. 7 ("Accordingly, Mr. Donoval has a community property interest in any award of future earnings and back pay to Ms. Hammer in the present case. He therefore has a 'proprietary interest[7] in the . . . subject matter of the litigation,' and Mr. Donoval's disqualification from all further representation of Ms. Hammer is appropriate under Rule 1.8(i).").

In other words, Defendants' offered authority does not address the myriad of possible issues that flow from a very strict reading of Rule 1.8(i) when an attorney has a spouse for a client. In that more nuanced setting, no case has been called to the Court's attention (and the Court likewise finds none) that forbids an attorney from representing a spouse solely because the attorney's inherent community property interest in the client's/spouse's potential monetary

---

[6] This assumes that Plaintiffs have not separately entered into some agreement which remodels by private contract the typical community property interests between a husband and wife in Idaho.

[7] It is not entirely clear whether a pecuniary and/or community property interest amounts to a proprietary interest under Rule 1.8(i) – Defendants certainly believe this to be so. Without answering the question, this Memorandum Decision and Order assumes this to be the case.

**MEMORANDUM DECISION AND ORDER - 13**

award amounts to an improper and disqualifying proprietary interest. To the contrary, even if not common, it is not unusual for an individual to be represented by their attorney spouse. And this makes sense (while not running contrary to Rule 1.8(i)) because such a relationship – though technically one of attorney and client – is fundamentally one of husband and wife and, therefore, arguably beyond the orbit of Rule 1.8(i)'s mandate, purpose, and protections. Said differently, community property interests in a pecuniary sense ordinarily are distinct from an attorney's proprietary interest in the subject matter of a case – either in an ownership setting or as remuneration for legal services. The former precept exists by operation of the law; the latter arrangement risks giving an attorney too great an economic interest in the representation, while making it more difficult for a client to discharge the attorney if the client so desires. *See* Idaho R. Prof'l Conduct 1.8, cmt. 16. Without more, any generalized community property interest which exists because of the marriage between Plaintiffs Donoval and Hammer does not rise to the level of a specific unauthorized proprietary interest proscribed by Rule 1.8(i).

Similarly, the fact that Plaintiff Donoval has a separate claim that rises and falls with Plaintiff Hammer's claims does not turn into a problematic proprietary interest under Rule 1.8(i). *See* Mem. in Supp. of Mot. to Disq., pp. 7-8 (Docket No. 137, Att. 1) (Defendants describing Plaintiff Donoval's claim thusly: "However, Mr. Donoval's retaliation claim under Count VI is not an independent claim. Instead, he claims that an adverse action against his client caused his inability to exercise his right to free speech – in this case political speech. *He cannot recover under the theory he alleges absent proving retaliatory discharge against his client Ms. Hammer.*" (emphasis added)). Defendants go on to argue that this alignment of claims nonetheless "creates an untenable conflict" between Plaintiffs Donoval and Hammer because it "creates a significant risk that Mr. Donoval will be materially limited in arguing or settling this claim on behalf of Ms. Hammer as it directly impacts his own claims against the Defendants."

**MEMORANDUM DECISION AND ORDER - 14**

*Id.* at p. 8. Again, the Court views Defendants' characterization as overstated, while failing to offer any legal support for their position.

Defendants argue that Plaintiff Donoval's "best interest" (derived from the fact that he too has an individual claim against Defendants) "is to ensure that Ms. Hammer retains her claims." *Id*. But such interests are parallel in this case and the Court is not persuaded that there is either an inherent or a lurking conflict in such circumstances that warrants disqualification. Even if Plaintiff Donoval's interest in own his claim is arguably "proprietary," it is not an interest that runs counter to the purpose of Rule 1.8(i). *See supra*; *see also, e.g.*, *Cooke v. AT&T Corp.*, 2006 WL 1447415, *3 (S.D. Ohio 2006) ("[T]his Court believes that American lawyers and the general public would be shocked by an interpretation of the ethics rules that would prohibit an attorney from representing his or her spouse in any case where the attorney might possess an overlapping claim . . . ."). Perhaps, if Plaintiff Donoval's claim only survived if Plaintiff Hammer's claims were dismissed, Plaintiff Donoval's status as Plaintiff Hammer's attorney would be more discomforting. But that is not the situation before the Court. Defendants' Motion to Disqualify is denied in these respects.

      b.     Rule 1.7

Focusing again on the fact that his personal claim is directly related to and contingent upon his wife's claims, Defendants argue that Plaintiff Donoval has an "untenable" concurrent conflict under Rule 1.7 and therefore must be disqualified. *See* Mem. in Supp. of Mot. to Disq., pp. 10-11 (Docket No. 137, Att. 1). Rule 1.7 provides:

> (a)     Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1)     the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by the personal interests of the lawyer, including family and domestic relationships.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Idaho R. Prof'l Conduct 1.7.

Defendants seem to acknowledge that Plaintiffs' separate claims are not directly adverse. Therefore, Defendants rely upon Rule 1.7(a)(2). *See* Mem. in Supp. of Mot. to Disq., p. 10 (Docket No. 137, Att. 1) ("Thus, *even absent directly adverse interests*, 'a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests.'" (quoting Idaho R. Prof'l Conduct 1.7, cmt. 8)). Even so, they remain misplaced.

First, there currently is no requisite "significant risk" that, in representing himself pro se, Plaintiff Donoval's simultaneous representation of his wife will be "materially limited" as contemplated by Rule 1.7(a)(2). Defendants acknowledge Plaintiffs' "apparent alignment of interests" at present, but warn that a potential conflict may emerge as the case progresses. *See id.* at p. 10. But this is not enough. "*The mere possibility of subsequent harm does not itself require disclosure and consent.* The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent

**MEMORANDUM DECISION AND ORDER - 16**

professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Idaho R. Prof'l Conduct 1.7, cmt. 8 (emphasis added).

Further, the record does not reveal any indication of a likely conflict between Plaintiffs' interests – again, if anything, just the opposite. A concurrent conflict is either too tenuous or does not exist, such that Rule 1.7(a)(2) does not apply. *See Pesky v. United States*, 2011 WL 3204707, *2 (D. Idaho 2011) ("Moreover, the court cannot even conclude at this stage that a significant risk of material limitation exists. As Comment 8 explains, '[t]he mere possibility of subsequent harm does not itself require disclosure and consent.' Accordingly, the court will deny defendant's motion on this ground." (internal citation omitted)); *Cooke*, 2006 WL 1447415 at *3 ("[T]his Court believes that American lawyers and the general public would be shocked by an interpretation of the ethics rules that would prohibit an attorney from representing his or her spouse in any case where the attorney might possess an overlapping claim . . . .").

Second, even assuming a concurrent conflict, Rule 1.7(b) still would permit Plaintiff Donoval to represent Plaintiff Hammer. It is unchallenged that he can provide competent and diligent representation to Plaintiff Hammer; the representation is not prohibited by law; the representation does not involve claims against each other; and Plaintiff Hammer has consented to her husband's representation of her. *See* Hammer Aff., ¶¶ 34, 36 (Docket No. 140, Att. 8) ("On April 13, 2015, Mr. Donoval filed an Appearance on my behalf in this case. I waived any possible conflicts that may have existed due to Mr. Donoval being my husband, and have continued to do so through the entire proceeding of this case. . . . . Since the filing of Mr. Johnson's Appearance, Mr. Johnson and Mr. Donoval have acted as co-counsel or associated counsel on matters related to me, with my full knowledge and approval, and with me waiving any conflicts of interest related to Mr. Johnson or Mr. Donoval."). The comments to Rule 1.7

**MEMORANDUM DECISION AND ORDER - 17**

make clear that "common representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met." Idaho R. Prof'l Conduct 1.7, cmt. 23; *see also id*. at cmt. 28 ("[A] lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, *but common representation is permissible where the clients are generally aligned in interest even though there is some different in interest among them*." (emphasis added)). Defendants' Motion to Disqualify is also denied in these respects.

        c.      *Rule 3.7*

Finally, based upon Plaintiff Donoval's role as (1) a party to the action, (2) the spouse of a party to the action, and (3) the attorney for both his claim and his spouse's claims, Defendants contend that Rule 3.7 requires that he be disqualified because he is a necessary witness. In relevant part, Rule 3.7 reads:

> (a)    A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>      (1)    the testimony relates to an uncontested issue;
>
>      (2)    the testimony relat4es to the nature and value of legal services rendered in the case; or
>
>      (3)    disqualification of the lawyer would work substantial hardship on the client.

Idaho R. Prof'l Conduct 3.7(a).

However, nothing in Rule 3.7 precludes Plaintiff Donoval from representing Plaintiff Hammer in *pre-trial* activities; indeed, the Rule itself specifically cautions against lawyers acting as an advocate "*at a trial.*" *Id.* (emphasis added); *see also Saetrum v. Raney*, 2014 WL 2155210, *5 (D. Idaho 2014) ("As a threshold matter, Deputy Vogt's motion [to disqualify counsel] is premature because Rule 3.7 is expressly limited to a lawyer's advocacy 'at trial.'" (citing/quoting *Burch-Lucich v. Lucich*, 2013 WL 5876317, *9 (D. Idaho 2013) ("[R]aising [Rule 3.7] at this

**MEMORANDUM DECISION AND ORDER - 18**

point is premature. This rule does not prevent a lawyer/witness from representing a client during pretrial proceedings."); *In re Elias*, 2005 WL 470552, *6 (Bankr. D. Idaho 2005) ("Counsel's disqualification under [ ] Idaho Rules of Professional Conduct [3.7] is not absolute . . . . Under the Rule, Counsel would likely not be prohibited from representing the bankruptcy estate during pretrial matters even if he is called as a witness at trial. Should the issue arise prior to trial, Counsel could assume a dual role under the circumstances set forth in the Rule.")).

Moreover, the generic risks typically associated with an attorney who is also a potential trial witness are more common (and concerning) when the lawyer-witness is not a litigant – potentially confusing a jury as to the differences between advocacy and testimony. But Plaintiff Donoval is representing both himself (pro se as a party litigant) and Plaintiff Hammer (as her attorney). *See* Cooke, 2006 WL 1447415 at *3 ("[T]he jury will understand that Mr. Cooke [(an attorney representing himself and his wife)] has an interest in the outcome of the case both with respect to his own claim and his wife's claim and will take that into account in evaluating both his testimony and arguments he presents as an advocate for both. In short, the purposes served by the cited Disciplinary rules will not be subverted in this unique situation.").

In other words, not all instances in which an attorney may testify at trial are to be treated in the same manner so as to blindly apply Rule 3.7 to disqualify the attorney in any such circumstance. *See supra*. Plaintiff Donoval is not just an attorney who may testify at trial; he is also a party litigant with a legal claim. There is no basis to prevent him from serving in such a dual role and, at this juncture and in this context (and for similar reasons), no basis to prevent him from serving as Plaintiff Hammer's attorney in pre-trial activities as well.

The Court does not decide here the question of whether Plaintiff Donoval may represent Plaintiff Hammer *at trial*, particularly in light of Plaintiff Donoval's repeated representations that he will not do so. *See supra*; *see also* Opp. to Mot. to Disq., p. 15 (Docket No. 140) ("In this

**MEMORANDUM DECISION AND ORDER - 19**

case, Mr. Donoval will be testifying to facts, but will not be actively acting as an advocate for Ms. Hammer because Mr. Johnson will be making opening and closing arguments on behalf of Ms. Hammer. Instead, Mr. Donoval will be simply assisting Mr. Johnson at trial – not acting as an advocate as to the application of the facts to the law in front of the jury."). If it becomes apparent that Plaintiff Donoval will attempt to represent Plaintiff Hammer at trial, that issue will be taken up at that time with the benefit of a more developed record.[8] Defendants' Motion to Disqualify is also denied in these respects – that is, Plaintiff Donoval may represent Plaintiff Hammer in pre-trial activities and Defendants may renew their objections to Plaintiff Donoval's representation of Plaintiff Hammer at trial if the circumstances so justify.

### III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Overrule Assertions of Accountant-Client and Attorney-Client Privilege and to Compel Responses (Docket No. 131) is DENIED, without prejudice; and

2. Defendants' Motion to Disqualify James R. Donoval (Docket No. 137) is DENIED. Defendants may renew their objections to Plaintiff Donoval's representation of Plaintiff Hammer at trial, if circumstances support such objections.

DATED: February 26, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge

---

[8] Plaintiffs contend that, if Plaintiff Donoval is barred from acting as Plaintiff Hammer's legal counsel at trial, Defendants' attorney, Kirtlan Naylor, is also barred from acting as Defendants' counsel at trial. *See* Opp. to Mot. to Disq., pp. 19-20 (Docket No. 140). That issue also is inchoate based upon the rulings made at this time, and Plaintiff is free to renew such an argument at trial if circumstances justify.

**MEMORANDUM DECISION AND ORDER - 20**